**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**--------------------------------x**
**UNITED STATES OF AMERICA**          **:**

                    **- v. -**          **:**     **07 Cr. 1095 (SAS)**

**ALEXANDER CONCEPCION,**              **:**

                    **Defendant.**      **:**
**--------------------------------x**

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S MOTION TO SUPPRESS WIRETAPS

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the United States
                                    of America.

JOHN T. ZACH
WILLIAM J. HARRINGTON
Assistant United States Attorneys
      - Of Counsel -

## TABLE OF CONTENTS

I.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  ARGUMENT: The Defendant's Motion To Suppress The Court-
     Authorized Wiretap Evidence In This Case
     Should Be Denied.. . . . . . . . . . . . . . . . . . . . 4

     A.   Applicable Law . . . . . . . . . . . . . . . . . . 5

     B.   Motion Of The Defendant  . . . . . . . . . . . . . 8

III. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
UNITED STATES OF AMERICA         :

               - v. -            :        07 Cr. 1095 (SAS)

ALEXANDER CONCEPCION,            :

               Defendant.        :
--------------------------------x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ALEXANDER CONCEPCION'S MOTION TO SUPPRESS COURT-AUTHORIZED WIRETAP EVIDENCE

The Government respectfully submits this Memorandum of Law in opposition to the pre-trial motion filed by Alexander Concepcion (the "defendant") in this case. The defendant seeks to suppress a court-authorized wiretap based on what he claims to be failures in the affidavit provided in support of the wiretap to show a necessity for the continued authorization of a wiretap in this case in violation of Title 18, United States Code, Sections 2518(1)(c) and (3)(c).

As stated below, there is no basis for the relief that the defendant seeks, and thus the Government respectfully submits that his motion should be denied without a hearing.

## I.   BACKGROUND

On December 4, 2007, Indictment 07 Cr. 1095 (SAS) was filed in the Southern District of New York charging the defendant with conspiracy to distribute narcotics, specifically cocaine base (in a form commonly known as crack), in violation of Title 21, United States Code, Section 846.

The investigation that culminated in the Indictment began when a cooperating informant ("CI-1") informed the Federal Bureau of Investigation that the defendant, who had been incarcerated with CI-1 for approximately one to two months, told CI-1 that he knew certain individuals that were seeking to obtain explosives and other weapons to destroy bridges and tunnels in the United States. (Affidavit of Eric M. Paholsky ("Paholsky Aff.") ¶ 16).[1]  Based in part on that information, the Government sought authorization to intercept a cellphone used by the defendant (the "Target Cellphone") in this case.  On June 20, 2007, the Government first received authorization to intercept calls on the Target Cellphone from the Honorable Alvin K. Hellerstein, United States District Judge for the Southern District of New York (the "June 20th Order").  The defendant does not challenge the validity of that authorization.

After the expiration of the June 20th Order, the

---

[1]   The Paholsky Affidavit is attached as an exhibit to the defendant's submission beginning with Bates number 154 (in the lower right hand corner of the page).

Government sought to continue interception of the Target Cellphone. In making an application for continued interception of the Target Cellphone, the Government explained, in the affidavit of Special Agent Eric Paholsky of the FBI, that interception of calls pursuant to the June 20th Order "did not provide further evidence concerning any plot to obtain explosives and weapons for the purpose of blowing up bridges and tunnels in the United States." (Paholsky Aff. ¶ 17). Special Agent Paholsky explained that "[t]he calls did, however, demonstrate that ALEXANDER CONCEPCION and other TARGET SUBJECTS are involved in narcotics and weapons trafficking." (Id.) The Paholsky Affidavit proceeded to set forth probable cause for the defendant's participation in the sale of narcotics and weapons by describing numerous calls intercepted pursuant to the June 20th Order. (See id. ¶¶ 19-40).

In addition, the Paholsky Affidavit also set forth detailed reasons why the alternative investigative procedures had failed or were unlikely to succeed, including the use of grand jury subpoenas (id. ¶ 43), informants (id. ¶ 44), surveillance (id. ¶ 47), telephone records and pen register devices (id. ¶ 49), a federal grand jury (id. ¶ 50), witness interviews of known associates of the defendant (id. ¶ 51), search warrants (id. ¶ 52), and arresting the defendant (id. ¶ 53). In addition, the Paholsky Affidavit discussed specific techniques that had been

3

used by the Government to further the investigation.  Those techniques included the use of an informant (CI-1) (id. ¶¶ 43-44), the attempted introduction of an undercover officer to the defendant (id. ¶ 45), and surveillance of the defendant (id. ¶ 47).

Subsequently, on July 20, 2007, the Government received authorization to continue to intercept calls over the Target Cellphone from the Honorable Victor Marrero, United States District Judge for the Southern District of New York.

## II.  ARGUMENT

### The Defendant's Motion To Suppress The Court-Authorized Wiretap Evidence In This Case Should Be Denied

The defendant seeks to suppress phone calls intercepted over the Target Cellphone pursuant to the July 20th Order (and does not challenge calls intercepted pursuant to the June 20th Order).  The defendant argues that, prior to receiving court authorization, the Government failed to demonstrate necessity in seeking to continue to wiretap the Target Cellphone.  The defendant claims that "the government did not start the narcotics investigation of Concepcion–at that point, a suspected low-level drug dealer–by employing techniques proven to bear fruit in similar cases", but instead "immediately resorted to wiretapping and added after-the-fact justifications for their actions". (Def.'s Mem. at 9.)  As a result, the defendant asserts that calls intercepted pursuant to the July 20th Order should be

4

suppressed  (Id.)

That argument is meritless.  The affidavit of Special Agent Eric Paholsky in support of the wiretap, which was authorized by Judge Marrero, detailed the investigative steps he and his fellow law enforcement officers had taken towards meeting the objectives of the investigation, and how those steps were insufficient to achieve those objectives.  The affidavit fully complied with the "necessity" requirements of Title 18, United States Code, Section 2518.

### A.    Applicable Law

Title 18, United States Code, Section 2518(1)(c) requires that an application for the interception of telephonic communications include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  Similarly, Section 2518(3)(c) requires the judge reviewing a wiretap application to determine, as a condition of authorizing the wiretap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

These requirements ensure that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime."  United States v.

Kahn, 415 U.S. 143, 153 n.12 (1974).  The Second Circuit

explained the significance of these statutory requirements:

> [T]he purpose of the statutory
> requirements of § 2518 is not to
> preclude the Government's resort to
> wiretapping until after all other
> possible means of investigation
> have been exhausted by
> investigative agents; rather, the
> statute only requires that the
> agents inform the authorizing
> judicial officer of the nature and
> progress of the investigation and
> of the difficulties inherent in the
> use of normal law enforcement
> methods.

United States v. Diaz, 176 F.3d 52, 111 (2d Cir. 1999) (citing

United States v. Torres, 901 F.2d 205, 231 (2d Cir. 1990)).  See

also United States v. Trippe, 171 F. Supp.2d 230, 236 (S.D.N.Y.

2001); United States v. Lombardo, 98 Cr. 1180 (DLC), 1999 WL

305096 at *5 (S.D.N.Y. May 14, 1999).  Thus, Title III's

"alternative investigative techniques" sections do not establish

a "requirement 'that any particular investigative procedure be

exhausted before a wiretap be authorized.'"  United States v.

Young, 822 F.2d 1234, 1237 (2d Cir. 1987) (quoting United States

v. Lilla, 699 F.2d 99, 104 (2d Cir. 1983)); see also United

States v. Miller, 116 F.3d 641, 663 (2d Cir. 1997) (same).

        The legislative history of the statute further makes

clear that Section 2518(1)(c) is not designed to force the

Government to exhaust all "other investigative techniques."  As
the Senate Report concerning the statute explained:

> Merely because a normal
> investigative technique is
> theoretically possible, it does not
> follow that it is likely.  What the
> provision envisions is that the
> showing be tested in a practical
> and commonsense fashion.

S. Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968
U.S.C.C.A.N. 2190 (citations omitted); see also Torres, 901 F.2d
at 231-32 (quoting legislative history); United States v.
Ruggiero, 726 F.2d 913, 924 (2d Cir. 1984) (explaining that
affidavits in support of wiretap applications are viewed in
common sense and realistic fashion); Trippe, 171 F. Supp. 2d at
236 ("[T]he application must be viewed in a practical and common
sense manner and need be only minimally adequate to support the
issuing judge's determination of necessity.").

          In reviewing the authorization for a wiretap, a great
deal of deference is owed by the reviewing court to the issuing
court's prior finding of necessity.  See United States v.
Gigante, 979 F. Supp. 959, 963 (S.D.N.Y. 1997) ("In subsequently
reviewing these determinations [probable cause and necessity],
the trial court must accord substantial deference to the findings
of the issuing judicial officer, limiting its review to whether
the issuing judicial officer had a 'substantial basis' for making
the requisite findings.") (citing United States v. Wagner, 989

7

F.2d 69, 71 (2d Cir. 1993)); see also Trippe, 171 F. Supp. 2d at
236 ("The issuing judge's determination that the Government has
made adequate use of alternative investigatory techniques is
entitled to substantial deference.") (citing United States v.
Wilkinson, 754 F.2d 1427, 1433 (2d Cir. 1985)).

        Moreover, the bedrock law in this Circuit is that
wiretapping "is particularly appropriate when the telephone is
routinely relied on to conduct the criminal enterprise under
investigation." Young, 822 F.2d at 1237; see also United States
v. Steinberg, 525 F.2d 1126, 1131 (2d Cir. 1975)("the very scope
of the operations described in the affidavit made it highly
likely that numerous narcotics-related communications would take
place in the future"); Torres, 901 F.2d at 232.  And where there
is a conspiracy at work, the necessity of a wiretap is even more
compelling: "the clandestine nature of alleged conspiracies makes
them relatively less susceptible to normal investigative
techniques." United States v. Feola, 651 F.Supp. 1068, 1105
(S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989).

    **B.    Motion Of The Defendant**

        The defendant moves to suppress all phone calls
intercepted over the Target Cellphone pursuant to Judge Marrero's
July 20, 2006 Order.  The defendant challenges the Paholsky
Affidavit on the grounds that it failed to establish "necessity"
because it failed to "employ[] techniques proven to bear fruit in

similar [narcotics and weapons] cases.  (Def.'s Mem. at 9).

## III.  DISCUSSION

As discussed above, Section 2518(1)(c) requires
the Government to provide "a full and complete statement as to
whether or not other investigative procedures have been tried and
failed or why they reasonably appear to be unlikely to succeed if
tried or to be too dangerous."  Viewed against these legal
standards, it is abundantly clear that there is no basis to
suppress the wiretap.

The defendant argues that as the nature of the crimes
being investigated changed, the Government failed to utilize
investigative techniques appropriate to a weapons and narcotics
investigation.  Specifically, the defendant outlines a series of
investigative techniques that he believes should have been
implemented, though he candidly admits that those techniques "may
have failed." (Def.'s Mem. at 10).  The defendant's argument
should be rejected.

First, in issuing the July 20th Order, Judge Marrero
was well aware of the changed nature of the investigation, which
the Government plainly set forth in its application.  (See
Paholsky Aff. ¶ 17).  Accordingly, Judge Marrero's decision that
continued interception of the Target Cellphone was still
"necessary" should be given due deference by the Court.  See
Gigante, 979 F. Supp. at 963.  As the defendant points out in his

9

papers, the authorizing courts–both Judge Hellerstein and Judge Marrero–were advised of the changing nature of the crimes being investigated. (See Def.'s Mem. at 2-3). Those issuing courts nonetheless deemed the continued interception of the Target Cellphone necessary to advance the investigation.

Second, the FBI in fact pursued alternative means after the June 20th Order, but before the July 20th Order was issued by Judge Marrero. Contrary to the defendant's claim that "the [Paholsky] affidavit does not contain any meaningful discussion regarding the use of informants or undercover law enforcement officers" (id. at 6-10), the Paholsky Affidavit explains that, after the June 20th Order, the FBI attempted to introduce an undercover law enforcement officer to the defendant via CI-1. However, that investigative technique failed when the defendant began refusing CI-1's telephone calls. (Paholsky Aff. ¶ 45). Likewise, the Paholsky Affidavit also explains the surveillance problems that the FBI experienced after the issuance of the June 20th Order and the difficulties the FBI faced in identifying potential cooperating witnesses. (Id. ¶¶ 46-47). The Paholsky Affidavit also notes that communications between CI-1 and the defendant had ceased (id. ¶ 45), which, of course, made CI-1 unusable to advance the investigation. Accordingly, it was necessary for the Government to continue to wiretap the Target Cellphone given that those investigative techniques had been

10

tried and had failed.

Third, as discussed in more detail below, the
defendant's proposed investigative techniques (that is, those
that he deems to have been "necessary") were likely to fail and
the Government was under no obligation to utilize them.  Indeed,
the very implausibility of those proposed techniques demonstrates
that the July 20th Order was necessary to gain essential
information into the defendant's criminal activities as well as
to learn the identities and criminal activities of his
co-conspirators.

A.    A Controlled Delivery Would Not Have Been Feasible.

The defendant contends that the Government should have
used the names and other information of co-conspirators
intercepted over the wire to conduct a controlled delivery.
(Def.'s Mem. at 10).  That claim misunderstands what is needed to
perform a controlled delivery.

A controlled delivery is where a package containing
real or fake contraband is provided to a target via a cooperator,
confidential informant or undercover law enforcement officer, at
a predetermined location that is under surveillance.  In this
case, a controlled delivery would not have been an appropriate
law enforcement tool.  As the Pahlosky Affidavit explained, based
on information previously obtained pursuant to the June 20th
Order, the Government was unable "to confirm and reveal fully the

11

identity of numerous co-conspirators . . ., the location of any drugs or guns, or the location of any drugs or gun trafficking transactions."  (Paholsky Aff. ¶ 42).  In addition, the affidavit noted that the Government failed in its attempt to introduce an undercover officer to gain meaningful access to the defendant. (Id. ¶ 45). Given that failure, it was highly unlikely that the Government would have been able to introduce a second undercover officer in connection with the investigation (especially given the fact CI-1 and the defendant were no longer in contact). Likewise, the Paholsky Affidavit stated that "the Government [was] not aware of any individuals who [were] associates of ALEXANDER CONCEPCION, and who might [have been] introduced to Concepcion in a covert capacity."  (Id. ¶¶ 45-46).  In fact, the Paholsky Affidavit repeatedly noted that the Government was unable to fully identify the defendant's numerous co-conspirators using alternative means of investigation.  (Id. ¶¶ 46, 49, 52, 53).

Thus, it would not have been feasible to conduct a controlled delivery because there was no access to the defendant via undercover officers or confidential informants to provide the defendant with the necessary contraband.  Moreover, the Government had not identified "the location of any drugs or gun trafficking transactions" where such a delivery could plausibly have been set up.  (Id. ¶ 42).  Accordingly, the defendant's

12

argument that a controlled delivery was required to meet the Government's Section 2518(1)(c) obligations is wrong.

### B.   Identification of Potential Cooperator

Likewise, the defendant's contention that the Government should have identified a potential cooperator is specifically addressed in the Paholsky Affidavit.  As discussed above, the Paholsky Affidavit set forth that "the Government [was] not aware of any individuals who [were] associates of ALEXANDER CONCEPCION, and who might [have been] introduced to Concepcion in a covert capacity."  (Paholsky Aff. ¶ 46). Moreover, the Government attempted to introduce an undercover law enforcement officer, but that attempt failed when Concepcion stopped communicating with CI-1.  (Id. ¶ 45).  Indeed, CI-1, an "insider", was herself/himself not a useful investigative tool because, among other reasons, s/he was no longer in communication with the defendant as the investigation progressed.  In other words, the Government had already tried the defendant's suggestion and it had failed.

### C.   Surveillance of the Defendant's Home

The defendant also contends that the Government was obligated to conduct additional surveillance of the defendant's home.  (Def.'s Mem. at 10).  That too is wrong.  The Government in fact conducted surveillance of the defendant, but to no avail because the defendant frequently changed cars and his manner of

13

driving thwarted those surveillance attempts.  (Paholsky Aff. ¶
45).  The defendant's conduct corroborates Special Agent
Paholsky's statement that "narcotics and weapons traffickers are
extremely surveillance conscious . . . [and] it would not [have
been] possible to learn about the substance of the TARGET
SUBJECT's plans–or even the full scope of ALEXANDER CONCEPCION's
activities–by conducting physical surveillance." (Id. at ¶ 47).
Moreover, the Paholsky Affidavit noted that wire intercepts were
a necessary means of improving surveillance and learning more
about the defendant's and his co-conspirator's criminal
activities.  (Id. at ¶ 48).

        In any event, it is unclear what the agents would have
been able to accomplish by staking out the defendant's home.
While they would have been able to see who was coming and going,
they would obviously have no idea what was happening inside of
the home.  In essence, they would be conspicuously positioned
outside the defendant's home and at great risk of being
identified by the defendant and his associates, thereby putting
the investigation at risk.  As the Paholsky Affidavit points out,
"if the intensity of existing surveillance were to be increased,
and if the subjects of this investigation became alerted to the
existence of such surveillance, the result might be a temporary
cessation of their illegal activities or a change in their
instrumentalities or methods at a critical point in the

14

investigation."  (Id. at ¶ 45).  Thus, surveillance of the
defendant's home simply was not a requirement that the Government
had to meet to comply with Section 2518(1)(c).

> D.   Directly Approaching the Defendant

The defendant's final assertion is that the Government
should have simply called the defendant and posed as a potential
customer.  (Def.'s Mem. at 10).  Based on information set forth
in the Paholsky Affidavit, it is clear that directly approaching
the defendant would almost certainly have failed.  The Government
was unable to successfully utilize an undercover officer in the
investigation.  (Paholsky Aff. ¶ 45).  Likewise, the defendant
had ceased even speaking to the confidential informant and the
Government was stymied from obtaining additional information from
that source.  Given that alternative means of investigation
failed, there was little or no chance that a law enforcement
agent unknown to the defendant would have been able to "cold
call" the defendant and successfully negotiate a narcotics or
weapons transaction.  The likely result would have been to raise
the defendant's suspicions and jeopardize the investigation.

* * *

Accordingly, the defendant's argument that the
Government failed to meet the requirements of Section 2518(1)(c)
should be rejected because, among other reasons, it fails to
recognize that as the Government's investigation proceeded, the

15

Government did not have access to, and was unable to develop, insider witnesses with direct access to the defendant.

Moreover, it is clear from the Paholsky Affidavit that the FBI appropriately utilized and considered alternative means of investigation in this case that were entirely appropriate for a weapons and narcotics case.  Indeed, they are the same techniques used day in an day out in those cases.  Moreover, to the extent that these investigative techniques required direct contact with the defendant (e.g., controlled delivery or directly approaching the defendant), there was a substantial risk of danger to law enforcement officers and the public given the numerous calls that reflected the defendant's access to firearms and his participation in armed robberies.  (See Paholsky Aff. ¶¶ 20-24, 25-26, 31-32).

Simply put, the Government's Title III applications provided substantial detail regarding why alternative investigative techniques were not alone sufficient in this investigation.[1]  Especially given that the investigation was into

---

[1] The defendant also complains that much of Agent Paholsky's's affidavit consists of "mere boilerplate".  This often-cited, and rejected, complaint by a defendant is unavailing. As explained by the court in United States v. Herrera, 2002 WL 31133029, at *2 (S.D.N.Y. Sept. 23, 2002), which upheld "mere boilerplate" language, "[i]t should come as no surprise that the facts supporting the conclusion that the alternative methods would be unavailing often are similar from one narcotics operation to another;" see also United States v. Shipp, 578 F.Supp. 980, 988 (S.D.N.Y. Jan. 4, 1984)aff'd, 754 F.2d 1427 (2d Cir.), cert. denied, 472 U.S. 1019 (1985); Bellomo, 954 F.Supp. at 639; United States v. Estrada, 1995 WL 577757 at *6 (S.D.N.Y. Sept. 29,1995).

a narcotics and weapons conspiracy whose members employed the use
of cellphones to conduct its business, a wiretap was
"particularly appropriate," Young, F.2d at 1237, and the
necessity for it compelling, Feola, 651 F.Supp. at 1105.

          Applying the deeply rooted principles set forth above,
courts in this Circuit –- time and time again –- have upheld
wiretap applications with fact patterns and supporting affidavits
similar to those of the instant case.  They have likewise
outright rejected complaints, like the defendant's, that the
investigators did not adequately pursue normal investigatory
techniques before seeking resort to electronic interceptions.
See, e.g., Steinberg, 525 F.2d 1126 (upholding wiretap
notwithstanding sparse affidavit and Government's use with some
success of a confidential informant, an undercover agent with
direct access to the defendant, and telephone conversations
between the agent and the defendant in which they discussed the
sale of drugs); Musa, 1991 WL 84637 at *1-2 (rejecting the
defendant's argument that the Government "must first try"
techniques such as physical surveillance, the grand jury,
telephone records, or search warrants, because agent's affidavit
had demonstrated the limits of these techniques); United States
v. Villegas, 1993 WL 535013, at *7 (S.D.N.Y. Dec. 22, 1993)
(rejecting allegation that the Government had not gone to
sufficient lengths to explore normal investigative techniques,

17

and finding the wiretaps were necessary to "gather information
about the full scope of the conspiracy which could not be
satisfactorily obtained through the use of ordinary investigative
methods); United States v. Launi, 1989 WL 82436, at *2 (S.D.N.Y.
July 17, 1989)(rejecting allegation that the government had not
adequately explored normal investigative techniques, where
government had compiled a "mass of evidence" about the defendants
from an informant and undercover agent).  Therefore, in this
case, the defendant's second-guessing of the FBI's techniques
should not be entertained by this Court and his motion should be
rejected.

### IV. AN EVIDENTIARY HEARING IS NOT REQUIRED.

There is no basis for holding an evidentiary hearing in
connection with the defendant's motion.  The Second Circuit has
held that a fact hearing is only required where "'the moving
papers are sufficiently definite, specific, detailed, and
nonconjectural to enable the court to conclude that contested
issues of fact going to the validity of the search are in
question.'"  United States v. Watson, 404 F.3d 163, 167 (2d Cir.
2005) (quoting United States v. Pena, 961 F.2d 333, 339 (2d Cir.
1992)).  "Suppression motions are not . . . a vehicle to conduct
discovery."  United States v. Kornblau, 586 F. Supp. 614, 622
(S.D.N.Y. 1984).  The Court is "not required as a matter of law
to hold an evidentiary hearing if [defendant's] papers did not

18

state sufficient facts which, if proven, would have required the granting of relief requested." United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969); see also United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967); United States v. Jailall, 2000 WL 1368055, at *8-9 (S.D.N.Y. Sept. 20, 2000); United States v. Carrasquillo, 2000 WL 45708, at *2 (S.D.N.Y. Jan. 19, 2000).

In this case, there is simply no factual dispute that requires a hearing. The defendant makes no allegation that anything set forth in Paholsky Affidavit is false. Rather, the defendant contends that, given the information set forth in that application, the issuing court erred in finding that the Government had fulfilled its obligations pursuant to Section 2518(1)(c). That is a question of law that the Court decides, giving substantial deference to the issuing court, and not a disputed factual issue. Accordingly, an evidentiary hearing is not necessary in this case.

## V. CONCLUSION

Judge Marrero, who was aware of the changed nature of the investigation, came to the common-sense conclusion that the Government had made adequate use of traditional investigative techniques, and that less intrusive investigative procedures would not have been sufficient to expose the full scope of the defendant's and his co-conspirator's criminal activities. This

common-sense conclusion was fully supported by the contents of the Paholsky Affidavit.  These findings merit the "substantial" deference to which they are entitled.  See, e.g., Wilkinson, 754 F.2d at 1433; Ruggiero, 726 F.2d at 924.

For all of the foregoing reasons, the Government respectfully submits that the defendant's motion should be denied without an evidentiary hearing.

Dated:  New York, New York
        April 25, 2008

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:  _____

John T. Zach
William J. Harrington
Assistant United States Attorney
Telephone: (212) 637-2410

20

## CERTIFICATE OF SERVICE

JOHN T. ZACH deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

That on April 25, 2008, he caused a copy of the foregoing Government's Memorandum of Law in Opposition To Defendant's Pretrial Motion to be served electronically on:

> Hugh Mundy, Esq.
> 52 Duane Street-10th Floor
> New York, NY 10007
> Counsel for Alexander Concepcion

by causing a copy of the same to be served and filed electronically via the Court's electronic case filing system.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. Section 1746.

_____
JOHN T. ZACH

Executed on: April 25, 2008
             New York, New York